**Raymond WEST, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1461.**

Court of Appeals of Alaska.

Oct. 10, 1986.

A. Mark Gumaer, Law Offices of A. Mark Gumaer, Anchorage, for appellant.

William H. Ingaldson, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

Raymond West pleaded *nolo contendere* and was convicted as an accomplice of one count of burglary in the first degree, AS 11.46.300(a)(1). Superior Court Judge Karl Johnstone sentenced him to a term of seven years in prison with four years suspended. West's sole argument on appeal is that his sentence is excessive. While we agree that West's conduct justified a substantial sentence, we find the sentence imposed excessive and remand for resentencing to a term not to exceed five years with two and one-half years suspended.

## THE OFFENSE

Mrs. Roslind Bowser and her husband own and operate the Mountain View Car Wash. They live in an adjacent residence where they keep the receipts from the business. Raymond West worked for the Bowsers at the car wash and had visited in the Bowser home. His codefendant, Robert Kimbel, worked across the street at a convenience store. Both men were familiar with the Bowser residence and the fact that its owners kept cash there.

On August 25, 1985, West, Kimbel, and Merle Smith, a third person, drove to the Bowser residence at about 10:30 p.m. Kimbel and West got out of the car and walked to the residence. Smith, apparently, drove away. Using Mr. West's leather jacket, a window was broken and Kimbel entered the residence. Mrs. Bowser and her nine-year-old daughter were home alone watching T.V. when they heard a crash. The house lights were on. Mrs. Bowser imme-

diately called the police emergency number. Before the police dispatcher responded, Mrs. Bowser observed at least one person in her home. She yelled that she had a gun. The intruder(s) immediately left. Bowser's nine-year-old daughter was able to give a detailed description of Kimbel.

Kimbel and West talked briefly and then West left the scene. Kimbel walked back to the residence where he was apprehended by the police. Apparently, West subsequently went to police headquarters and gave a statement to the officers, regarding the incident. Kimbel implicated West, and West was arrested.

Kimbel and West each sought to place primary blame on the other. Kimbel told the police that West planned the burglary and that both men entered the residence. Kimbel said West called him "chicken" when he retreated after hearing Mrs. Bowser's claim to be armed. West denied any prior knowledge of the offense, suggesting that Kimbel borrowed his coat and broke the window without advance warning. He denied calling Kimbel a "chicken." West told the presentence officer that his no contest plea was the product of bad advice from his lawyer. At sentencing, his sister testified that West did concede some responsibility in failing to prevent Kimbel from breaking the window and in failing to contact the police immediately afterwards.

### THE OFFENDER

West is a first felony offender and has no misdemeanor or juvenile record. He was twenty-five years old at the time of the offense. West received an honorable discharge from the United States Army. He has been steadily employed as an adult. He has not graduated from high school but hopes to obtain his G.E.D. or high school diploma in the future. His long-term ambition is to own a trucking company. He has some experience and training as a mechanic.

West lives with a woman and their baby, and her child by a prior relationship, who West treats as his own.

### THE SENTENCE

Judge Johnstone held a joint sentencing hearing for West and Kimbel. He rejected their separate requests to suspend imposition of sentence, reasoning that to suspend sentence would unduly depreciate an extremely serious offense. Judge Johnstone noted that the two burglarized an occupied residence in the nighttime. He was impressed by the victim's statement that the incident had caused her and her daughter emotional injury, and also by the fact that Kimbel was found in possession of a Buck knife, which Judge Johnstone considered a dangerous weapon used in the offense. Judge Johnstone was most troubled by the defendants' unwillingness to unambiguously admit their guilt. He felt that both defendants lied about their involvement and were therefore unlikely to be rehabilitated without a substantial term of imprisonment. He recognized that Kimbel had a misdemeanor record, incurred fourteen years earlier, and was a few years older than West, but considered these facts of little significance because he found that West had instigated the incident and was thus equally to blame. Judge Johnstone therefore sentenced both men to terms of seven years with four years suspended.

### DISCUSSION

■ In *Austin v. State*, 627 P.2d 657 (Alaska App.1981), this court held that normally a first offender should receive a more favorable sentence than the presumptive sentence for a second offender. This rule should be violated only in an exceptional case. *Austin*, 627 P.2d at 657–58. First-degree burglary is a class B felony and the presumptive term for a second offender is four years. AS 12.55.125(d)(1). In the present case, the unsuspended portion of West's prison term is three years, one year less than the four-year presumptive term for a second offender.

■ In applying *Austin*, the court focuses on the period of actual incarceration in determining whether a first offender received a lengthier sentence than he would

have had had presumptive sentencing applied. *See Tazruk v. State*, 655 P.2d 788, 789 (Alaska App.1982). If the total sentence for the first offender exceeds the presumptive sentence for a second offender, but the actual time to serve is substantially less, then the total sentence would still meet the *Austin* requirement. *Brezenoff v. State*, 658 P.2d 1359, 1362 (Alaska App.1983). Although West's three years of actual incarceration meets the test of *Brezenoff*, and therefore does not violate *Austin*, we find his overall sentence to be inappropriate for three reasons.

■ First, a longstanding sentencing principle established by the Alaska Supreme Court is that first felony offenders convicted of nonviolent crimes should receive probation with restitution in the absence of aggravating factors. *See Leuch v. State*, 633 P.2d 1006, 1013–14 and n. 22 (Alaska 1981) (a probationary sentence is defined as a sentence of sixty days or less. In contrast, a sentence of ninety days or greater is not probationary). *See State v. Karnos*, 696 P.2d 685, 687 (Alaska App. 1985). Judge Johnstone stated in his sentencing remarks that he considered this incident to be more than a mere property crime because it occurred at night while the dwelling was occupied. Nevertheless, it is clear that the legislature has determined that burglary is an offense against property. *See* Alaska Statutes, Title 11, Chapter 46.

Had West, with no adult or juvenile criminal record, impulsively invaded a single unoccupied home and had he readily admitted his responsibility when apprehended, *Leuch* teaches that the court should seriously consider a suspended sentence with no more than shock probation; *i.e.*, a sentence of sixty days or less of incarceration.

This is true of class B as well as class C felonies. Where the defendant has a substantial juvenile or adult misdemeanor record, a longer sentence might be appropriate. *Tate v. State*, 711 P.2d 536, 540 (Alaska 1985) (permitting sentence of up to two years for a person with substantial adult misdemeanor record convicted of burglary in the second degree, a class C felony).

We recognize that all burglars are not the same, and certain factors, if present, might warrant a greater sentence for even a first offender. Where, for example, the defendant pleads to a single offense, but the prosecution presents verified information establishing that the defendant has committed a number of other burglaries, a longer sentence might be appropriate. *Hicks v. State*, 636 P.2d 81 (Alaska App. 1981). Also, an assault or threatened assault on an occupant would substantially aggravate a burglary. *Smothers v. State*, 579 P.2d 1062, 1064–65 (Alaska 1978).

West is not a professional burglar. He did not assault or threaten to assault Mrs. Bowser or her daughter. While Mrs. Bowser's claim to be armed with a gun no doubt accounts, in part at least, for West's and Kimbel's rapid departure from the Bowser residence, neither defendant has a history of violence. There is no basis in this record for speculation about what the defendants would have done had Mrs. Bowser not frightened them off. Kimbel's testimony that West persuaded him to return to the residence is troublesome, but West denied it and it is undisputed that West immediately left the scene. While Judge Johnstone rejected West's claims that he had no prior warning of the burglary, he did not specifically address this part of Kimbel's claim.[1]

---

1. It appears that Judge Johnstone and the prosecutor were of the view that the supreme court's dictum in *Leuch* regarding suspended sentences for those convicted of property crimes was limited to those who are convicted of what would be class C felonies under current law. West and Kimbel were convicted of class B felonies. Judge Johnstone apparently reasoned that most property crimes were classified as C felonies.

*See* AS 11.81.250(a)(3). The legislature made burglary in a dwelling a class B felony in recognition that it violated a victim's right to privacy as well as her or his interest in the integrity of her or his property. *See* AS 11.81.250(a)(2) (describing class B felonies, in part, as aggravated offenses against property interests). Judge Johnstone believed that it was necessary to send a clear message to the community that someone

Nevertheless, we are satisfied that Judge Johnstone was not clearly mistaken when he rejected West's request for a suspended sentence and imposed a prison sentence in excess of sixty days incarceration.

West knew, or should have known, that the residence was occupied because the television and the lights were on. Judge Johnstone properly concluded that the emotional injury from a burglary may last far longer than the length of time required to commit the offense and to apprehend the perpetrators. Certainly, West's attempts to minimize his involvement and shift the total blame to Kimbel raises questions regarding his amenability to rehabilitation. Judge Johnstone could properly find that probation plus restitution was insufficient, and that a substantial prison sentence was necessary for West in order to satisfy the objectives of sentencing set out in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970) (rehabilitation, isolation, deterrence of the defendant and others, and reaffirmation of community norms).

Notwithstanding that a substantial period of incarceration may be warranted, neither West's conduct in committing the offense, nor his past history justify a sentence of seven years with four years suspended. This brings us to our second reason for disapproving West's sentence.

The sentence in this case violates the rule of parsimony established in *Pears v. State*, 698 P.2d 1198, 1204–05 (Alaska 1985), where the court said:

> The trial court strongly relied on the objectives of deterrence of Pears and of other members of the community and of reaffirming societal norms. These are also appropriate considerations. It is, however, difficult to say what sentence is needed to satisfy them in this case. In our view a substantially less severe sentence would serve these objectives as well as that which was imposed.
>
> Two considerations lend support to this conclusion. The first is the "principle of parsimony." The defendant's liberty should be restrained only to the minimum extent necessary to achieve the objectives of sentencing. The ABA Standards express the principle this way: "The sentence imposed in each case should call for the minimum sanction which is consistent with the protection of the public and the gravity of the crime." ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures § 18–2.2(a) at 18.57 (Approved Draft 1979). The second is in the nature of a caution. The easy assumption that the benefits of deterrence will continue to increase with the severity of a sentence is not necessarily true: "Our understanding of general deterrence is incomplete, but the fragmentary evidence available tends not to conform to any simple model under which sentences of high severity can always be justified on the grounds that they yield greater preventive benefits." ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures § 18–2.5 commentary at 18.120 (Approved Draft 1979).

698 P.2d at 1204–05.

Any sentence in excess of ninety days in prison is a substantial sentence. Since West has never served *any* prison sentence, it is difficult to support a conclusion

---

who burglarizes an occupied residence in the nighttime was going to prison for a long time no matter how exemplary her or his background, and no matter how likely it was that rehabilitation could be accomplished through restitution and community service. Judge Johnstone's views find some support in our decision in *Brezenoff v. State*, 658 P.2d 1359, 1362–63 (Alaska App.1983). In discussing *Leuch*, we mentioned: "Other things being equal, one who commits a class B felony should receive a more severe sentence than one who commits a class C felony." *Brezenoff*, 658 P.2d at 1363.

Our decision to approve of a sentencing range for West, who has no prior convictions and has never served time in a jail or a prison, that is similar to the range approved for Tate, who had an extensive misdemeanor record, reflects the fact that West was convicted of a class B felony and Tate of a class C felony. *See Tate v. State*, 711 P.2d at 540. *Cf. Zurfluh v. State*, 620 P.2d 690, 692 (Alaska 1980) (approving sentence of five years with two suspended where defendant with a misdemeanor record broke into a grocery store and stole $42,732).

that isolation should be an important sentencing criterion or that his individual deterrence would not be accomplished by a sentence of ninety days to two and one-half years of incarceration. *Pears* suggests that it is the fact of a substantial sentence of incarceration, in and of itself, rather than a sentence of protracted length which best serves the goals of general deterrence and reaffirmation of community norms. In summary, the *Chaney* criteria will not justify a sentence in this case in excess of ninety days to two and one-half years of actual incarceration.[2]

Third, it does not appear that the trial court properly compared West's conduct and prior criminal record with the background and conduct of others previously sentenced for the same or similar offense in determining West's overall sentence. *See, e.g., Pears v. State,* 698 P.2d at 1204; *Page v. State,* 657 P.2d 850, 855 (Alaska App.1983). Two recent opinions of this court are instructive for comparing other sentences for first-degree burglary.

In *Parker v. State,* 714 P.2d 802 (Alaska App.1986), we upheld a sentence of five years with two and one-half years suspended for first-degree burglary. Parker was twenty-three years old at the time of the offense and had two prior DWI convictions. The circumstances of the burglary in *Parker* are more egregious than in the present case. Parker and his accomplice smashed through the sliding glass door of an occupied home in the nighttime. The occupant of the home, a woman, locked herself in the bathroom while Parker and his friend pounded and kicked at the bathroom door, bowing the door and splintering the wood. Before the door was completely broken down the two men left, taking various items of personal property and cash from the house. In contrast, the victims in the present case were never confronted physically, no property was taken from the home, and there was a dispute unresolved by the trial court as to whether West ever actually entered the dwelling. Both Parker's overall sentence and his unsuspended term were shorter than the sentence imposed on West.

In *Wood v. State,* 712 P.2d 420 (Alaska App.1986), we vacated as excessive a composite five and one-half year prison sentence for a first felony offender convicted of first-degree burglary and second-degree burglary. Wood's first-degree burglary involved breaking a window to gain entry into an unoccupied dwelling, in order to steal approximately $3,000 in personal property. Wood was twenty years old at the time of sentencing and had a record of numerous juvenile and misdemeanor offenses and had previously spent approximately three and one-half years in juvenile institutions. This court found that Wood, despite his record, did not display the kind of consistent criminal conduct that would warrant a sentence in excess of four years, including suspended time. *Wood,* 712 P.2d at 425.

The circumstances surrounding West's burglary were less egregious than in *Parker,* and his past record was much better than the defendant's in *Wood,* yet both Parker and Wood received more lenient overall sentences than West. Thus, the principle of consistency among sentences suggests that West's sentence of seven years with three years to serve for a first offender with a clean record is excessive. (For a detailed comparison of first-degree burglary sentences previously reviewed by the Alaska Supreme Court and by this court, *see Wood,* 712 P.2d at 427–28 n. 6.)

---

2. In *State v. Karnos,* 696 P.2d 685, 687 (Alaska App.1985), we examined prior cases and concluded that a sentence in excess of ninety days was not probationary. We recognize that a sentence of two and one-half years in prison is substantially longer than a sentence of ninety days. Our approval of a sentencing range of ninety days to two and one-half years for West reflects the substantial discretion which trial judges have in determining an appropriate sentence. *Langton v. State,* 662 P.2d 954, 963 n. 7 (Alaska App.1983). It is only where a sentence falls outside the appropriate range that we are justified in terming it clearly mistaken. *McClain v. State,* 519 P.2d 811, 813 (Alaska 1974) (analytically, the clearly-mistaken test implies a permissible range of reasonable sentences, which after an independent review of the record will not be modified by the reviewing court).

**6**

## CONCLUSION

Judge Johnstone indicated in his sentencing remarks that incarceration in this case was necessary for rehabilitation and to deter others. He noted that West's victims were terrorized by his conduct and that West minimized his responsibility, casting doubt on his amenability to rehabilitation. These findings and conclusions find support in the record. On the other hand, West is a relatively youthful offender with an otherwise clean record, family ties and support in the community, and a fairly stable employment record. But for his refusal to fully acknowledge guilt, his prospects for rehabilitation seem good. Any period of incarceration should be for the minimum period necessary to meet the *Chaney* sentencing objectives. *See Donlun v. State*, 527 P.2d 472, 475 (Alaska 1974). A sentence in this case should therefore not exceed five years, with two and one-half years suspended.

Accordingly, we find that the trial court was clearly mistaken, *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974) and VACATE the sentence and REMAND for resentencing.