Allen J. **KRAMER**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–1788.

Court of Appeals of Alaska.

April 17, 1987.

---

Donald L. Surgeon, Asst. Public Defender, Bethel, and Dana Fabe, Public Defender, Anchorage, for appellant.

Bryan E. Schuler, Dist. Atty., Bethel, and Ronald W. Lorensen, Acting Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

SINGLETON, Judge.

Allen Kramer pled no contest and was convicted of theft in the first degree, a class B felony, AS 11.46.120(a). He appealed, challenging his sentence as excessive and arguing that restitution had been set without regard to his earning capacity. We affirmed Kramer's sentence of imprisonment but remanded for reconsideration of the restitution award. We directed the trial court to set restitution in conformity with the directions given in *Karr v. State,* 686 P.2d 1192, 1196–97 (Alaska 1984). *Kramer v. State,* Summary Disposition No. 1004 (Alaska App., December 11, 1985).

Kramer had initially been required to pay restitution in the amount of $144,463 with ten percent annual interest, less any of the principal amount of $50,000 which might be awarded to the Veterans of Foreign Wars (Kramer's victim) from then pending civil litigation. On remand, the trial court reduced the amount of restitution to $69,559. The trial court calculated this amount by subtracting a $50,000 civil judgment awarded to the victim from the $144,463; the trial court also subtracted $24,904 that it had awarded in consequential damages. Finally, Superior Court Judge Christopher R. Cooke suspended any requirement that Kramer pay interest on the restitution amount. The trial court directed that Kramer and his probation officer set up a payment schedule after Kramer's release from incarceration.

Kramer requested reconsideration of this order in light of our remand. In the meantime, Judge Cooke retired and Superior Court Judge Gail Roy Fraties was appointed to succeed him. Reconsideration was granted, and Judge Fraties determined to leave the restitution award as it was. Two considerations prompted Judge Fraties. First, he felt that it was unrealistic to determine Kramer's ability to pay restitution until Kramer was released from incarceration and reintegrated into the community. Second, Judge Fraties was concerned that Kramer may have secreted a substantial portion of the money he embezzled. Judge Fraties believed that if restitution was set, based solely on Kramer's future earning capacity, without regard to the possibility that Kramer had retained a substantial portion of the embezzled funds, the victim would not have been fairly treated. Kramer appeals; we reverse.

Judge Cooke was the sentencing judge in this case. When we initially reversed the restitution order, the case was remanded to Judge Cooke. He entered an order on remand, and subsequently retired. Thus, the motion for reconsideration was before Judge Fraties. Although he granted the motion for reconsideration, Judge Fraties was apparently reluctant to amend Judge Cooke's order. Under the circumstances, Judge Fraties was free to exercise his independent judgment regarding the merits of the motion. *Gnegy v. State,* 729 P.2d 895 (Alaska App.1986).

The first of Judge Fraties' reasons for declining to amend Kramer's restitution order finds some support in our past decisions. *See, e.g., Karr v. State,* 660 P.2d 450 (Alaska App.1983); *Brezenoff v. State,* 658 P.2d 1359, 1364 (Alaska App.1983). *Karr,* however, was reversed in *Karr v. State,* 686 P.2d 1192 (Alaska 1984), which specifically disapproved *Brezenoff.* In *Karr,* the supreme court held that the initial sentencing was the appropriate time

for determining a defendant's ability to pay restitution, even though the defendant was simultaneously sentenced to a substantial period of incarceration. 686 P.2d at 1196–97. In the supreme court's view, an appropriate restitutionary amount could not be delayed until the defendant left prison and was reintegrated into the community. Further, the supreme court held that the superior court must determine both the total amount of restitution to be paid and the terms of payment at the sentencing hearing. The probation officer may not be assigned this judicial responsibility. 686 P.2d at 1197 n. 15.

In this case, the trial court has never made express findings of fact regarding Kramer's ability to pay restitution once he obtains his freedom. The case must therefore be remanded for that purpose.[1]

Judge Fraties' second reason for denying relief is also troublesome. Certainly, the trial court may take into account a defendant's existing assets as well as his or her earning capacity in setting restitution. Where the trial court finds, based on evidence, that the defendant has possession of, or continuing control over, the fruits of his or her crime, a recoupment order may

properly be entered. It is important to stress, however, that while such an order may rest on circumstantial evidence, it may not rest purely upon speculation. It does not appear that a hearing has ever been held to determine whether Kramer still has possession of, or access to, any of the fruits of his crime. It was therefore inappropriate to ignore the express requirements of AS 12.55.045(a), that the restitutionary award take into account the financial resources of the defendant and the nature of the burden its payment will impose.

The superior court order requiring Kramer to pay $69,559 in restitution is VACATED and this case is REMANDED to the superior court to determine an appropriate award of restitution; the court should consider Kramer's financial resources, including his assets and his future earning capacity.[2]

1. In a similar case we recently said:

The trial court could not make a valid restitution order without determining [the defendant's] future earning capacity. Necessarily, such a determination requires preliminary findings of fact regarding her mental and physical health, her education, her job skills if any, the kinds of jobs which she has held in the past and is capable of performing in the future and the availability of such jobs in the communities in which [the defendant] will likely reside. Once these findings are made, the court is in a position to determine [the defendant's] likely future earnings and the extent to which those earnings will cover her likely future expenses for food, clothing and shelter and leave her a surplus out of which to pay restitution. While the presentence report does recommend restitution, it does not discuss [the defendant's] earning capacity or the kinds of jobs that she could reasonably be expected to perform in the future. It is therefore necessary that this case be remanded to the trial court for further findings. Since the

parties may not have appreciated the need to establish [the defendant's] earning capacity at the sentencing hearing, they should, on request, be given a reasonable opportunity to do so.

*Zimmerman v. State,* 706 P.2d 343, 344–45 (Alaska App.1985).

2. Part of the difficulty in this case may result from a failure to distinguish between a restitutionary award in a criminal case to be paid to the victim, and civil damages which may be recovered by the victim from the defendant in a separate civil proceeding. It is important to stress that restitution and civil damages are totally independent under Alaska law. Alaska Statute 12.55.045(b) provides that an order of restitution under this section does not limit any civil liability of the defendant arising from the defendant's conduct. Thus a restitutionary award has no effect on the victim's ability to recover damages in a civil action.