**Leo G. RESECKER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1248.**

Court of Appeals of Alaska.

June 27, 1986.

---

Phillip Paul Weidner, Weidner and Associates, Anchorage, for appellant.

Marcia H. Bissell, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before COATS, SINGLETON, and GONZALEZ, * JJ.

## OPINION

SINGLETON, Judge.

Leo G. Resecker was convicted of driving while license revoked (DWLS), AS 28.15.-291, and sentenced to 360 days' incarceration with 240 suspended. He appeals his conviction and sentence. We affirm.

Resecker was stopped at approximately 2:25 a.m. on February 21, 1984, because his vehicle lights were not on shortly after he drove out of the parking lot of the Pines Club. Resecker told the trooper who made the stop that his name was Rick Gutierrez, and gave the trooper a home telephone

---

* Gonzalez, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

number. Resecker stated that he had a valid operator's license, but that he did not have the license nor any other identification with him. Resecker also stated that he did not know where the vehicle registration was.

The trooper placed Resecker in the back of his patrol vehicle, and asked over the radio for someone to call the number given by Resecker. A short time later, the dispatcher told the trooper that the woman who answered the telephone stated that Rick Gutierrez was right next to her. There was no record of a Rick Gutierrez in the trooper computer records. The trooper told the dispatcher the license plate number of the car he had stopped, then let Resecker get out and walk toward the Pines Club so that he could make arrangements for a ride. Approximately one-half hour had passed since the stop.

Shortly thereafter, the dispatcher contacted the trooper to tell him that the car was registered to Leo G. Resecker, that there was an arrest warrant out for Resecker, and that his license had been revoked. The dispatcher also provided a general description which matched the driver. The trooper asked that a copy of Resecker's driver's license photo be brought out to him, and then recontacted Resecker and placed him in the trooper vehicle again. Within a couple of minutes, another trooper arrived with the photo, which was clearly of the driver. The trooper then placed Resecker under arrest, and gave the required *Miranda* warnings. Resecker stated that, having these rights in mind, he was willing to answer questions. Resecker told the trooper his true name, that he thought his license was suspended as a result of a conviction for driving while intoxicated (DWI), and that he had given a wrong name because there was a warrant out for his arrest.

Resecker later moved to suppress the statements. The district court denied the motion, finding, *inter alia*, that the steps taken by the trooper were reasonable, and that the officer had probable cause for arrest as soon as he learned that the license of the owner of the car that Resecker was driving was revoked and that Resecker, who had given a false name, fit the general description given by the dispatcher.

▇▇▇ Resecker first argues that his conviction should be reversed because he was stopped illegally and detained too long. As noted by the district court, the initial stop was a valid exercise of the trooper's authority to enforce state traffic laws. *See State v. Burke,* 714 P.2d 374 (Alaska App. 1986); AS 28.35.225 (all law enforcement officers empowered to enforce regulations adopted under Title 28); 13 Alaska Admin. Code 04.010 (lights should be on after sunset). *See also* AS 28.35.182 (drivers must stop at direction of police officers). Shortly after the stop it became clear from Resecker's own admissions to the trooper that Resecker was in violation of AS 28.15.131, which requires a licensed driver to carry his license with him and exhibit the license upon request of a peace officer, and AS 28.10.081, which requires that the certificate of vehicle registration be carried in the vehicle and displayed upon request. *See also* AS 28.15.011(b) (drivers must be licensed, and have their licenses with them when they drive). The trooper's conduct in attempting to determine the identity of the driver was entirely reasonable. Nor can we say that the district court was clearly erroneous in concluding that, by the time the trooper received the general description of the vehicle's registered owner, he had probable cause to believe that the driver had committed the offense of driving while license suspended. *See, e.g., Ford v. State,* 699 P.2d 889, 890 (Alaska App.1985). In addition, we note that the trooper could have arrested Resecker at this point based on probable cause to believe that a warrant had been issued for Resecker's arrest. Alaska R.Crim.P. 4(b), and (c)(3). Any detention occurring after these facts were known to the trooper was clearly lawful.

Resecker contends that the period of detention between the time the trooper learned that Resecker had given a false telephone number and the time when Resecker left to arrange a ride was improper.

Yet Resecker has not explained why the court should have dismissed the case or suppressed Resecker's statements, given the fact that the statements were made later, after a lawful arrest. No statements were made during the period complained of, and there is no suggestion that the trooper would not have or could not have recontacted Resecker after receiving the additional information, had he let Resecker leave a few minutes earlier than he did.

■ Resecker also appears to argue that the statements should have been suppressed because his waiver of *Miranda* rights was not valid, and because the statements themselves were not voluntarily made. There was no evidence below to suggest Resecker's waiver and subsequent admissions were anything but voluntary. We find no error.[1]

■ Resecker next argues that the information charging him with DWLS was inadequate. The information charged:

That on or about the 21st day of February, 1984, at or near Anchorage, in the Third Judicial District, State of Alaska, Leo G. Resecker did unlawfully drive a motor vehicle upon a highway or vehicular way or area at a time when his driver's license had been cancelled, suspended or revoked.

All of which is a class A misdemeanor offense being contrary to and in violation of AS 28.15.291 and against the peace and dignity of the State of Alaska.

It appears to us that the information was sufficient to notify Resecker of the charge against him and to protect against double jeopardy. *See Kott v. State*, 678 P.2d 386, 389 n. 4 (Alaska 1984); *State v. Thomas*, 525 P.2d 1092, 1094 (Alaska 1974). Contrary to Resecker's argument, the information "need not state every element of the charge necessary to be proved at trial." *Lupro v. State*, 603 P.2d 468, 473 (Alaska 1979) (citations omitted). Resecker has not alleged that he was denied discovery of the facts surrounding his alleged offense, that he was confused or misled by the information, or that he was prejudiced in any way by a lack of specificity in the information. The district court properly denied Resecker's motion to dismiss on this ground.[2]

■ Resecker's final contention is that the district court erred in concluding that Resecker was subject to the mandatory ninety-day sentence set forth in current AS 28.15.291(c), and in imposing a sentence greater than ten days. *See* former AS 28.15.291(b). Alaska Statute 28.15.291(c) provides, in relevant part, that "The court shall impose a sentence of imprisonment of not less than 90 days and a fine of not less than $1,000 upon conviction of a violation of this section if the person's driver's license was revoked under circumstances described in AS 28.15.181(c)(2) or (3)."[3] Alaska Statute 28.15.291(b) provides:

---

**1.** Resecker also relies on *Stephan v. State*, 711 P.2d 1156 (Alaska, 1985), in which the supreme court held that police interviews with suspects should be tape recorded in their entirety. Assuming that *Stephan* is otherwise applicable, we note that the supreme court stated explicitly that the rule it announced in *Stephan* "applies only to custodial interrogations conducted in a place of detention, such as the police station or jail, where it is reasonable to assume that recording equipment is available...." 711 P.2d at 1165 n. 33. We are not persuaded that *Stephen* should be extended to cover crime scene interrogations even if recording equipment is fortuitously available.

**2.** To the extent Resecker makes a separate argument that the evidence was insufficient to sustain the conviction, we cannot agree. Resecker's statements to the trooper establish a *prima facie* case that Resecker was, at the very least,

criminally negligent with regard to the revocation. *Gregory v. State*, 717 P.2d 428 (Alaska App.1986). The trial court concluded there was sufficient evidence even without Resecker's inculpatory statements. We note that Resecker was apparently told of the revocation when he was sentenced on the DWI which led to the revocation.

**3.** Alaska Statute 28.15.181 provides, in pertinent part:

(a) Conviction of any of the following offenses is grounds for the immediate revocation of a driver's license:

.     .     .     .     .

(5) driving a motor vehicle while intoxicated;

.     .     .     .     .

(8) refusal to submit to a chemical test under AS 28.35.032 ...

When a person's license is canceled, limited, suspended or revoked, that person shall be informed by the department or the court that takes the action at the time of the action that, upon a conviction of driving on a highway or vehicular way or area in this state at a time when that person's driver's license or privilege to drive in this state has been canceled, suspended or revoked, or upon a conviction of driving in violation of a limitation of the license, that person will be subject to the mandatory minimum sentence of imprisonment under this section.

Resecker appears to concede that his license was revoked under circumstances described in AS 28.15.181(c)(2) or (3), but argues that the ninety-day minimum sentence was not applicable because he was never warned that it would follow if he drove during this period.

The record reflects that Resecker was sentenced for DWI on January 12, 1983. At that time, former AS 28.15.291(b) required the court to warn that violators would be subject to the mandatory ten-day minimum sentence. Resecker was told that his license was revoked, and that mandatory jail time would be imposed if he was convicted of driving during this period.

Resecker's conduct occurred after the effective date of the legislation providing for the ninety-day minimum. Application of the new sentencing provisions did not violate equal protection, nor did it constitute a violation of the *ex post facto* doctrine. *See Danks v. State*, 619 P.2d 720, 722 (Alaska 1980); *Carter v. State*, 625 P.2d 313, 315 (Alaska App.1981). Moreover, neither the warnings given by the court in 1983 nor the letter mailed to Resecker in that year informing him of the revocation and of the ten-day minimum sentence expressly or impliedly guaranteed that the penalty provisions then in effect would be applied to Resecker in the future. Consequently, the state was not estopped from seeking a sentence conforming to current law upon Resecker's conviction for DWLS.

■■■ We also reject Resecker's arguments that the mandatory minimum sentencing provisions of AS 28.15.291 are unconstitutionally overbroad, that they violate substantive due process, and that their application in his case constitutes cruel and unusual punishment. *See, e.g., Dancer v. State*, 715 P.2d 1174 (Alaska App.1986); *Koteles v. State*, 660 P.2d 1199 (Alaska App.1983). While harsh, requiring a ninety-day sentence for one who drives after his or her license has been revoked following two or more convictions for driving while intoxicated or refusal to submit to a chemical test is in no way arbitrary or capricious. The legislature could reasonably conclude that multiple DWI offenders should not be allowed to drive because of their demonstrated dangerousness, and that the necessity of deterring these individuals from driving is even greater than the necessity of deterring other individuals who have committed acts for which their license may be revoked or suspended. The punishment prescribed is not disproportionate to the offense. *Dancer*, 715 P.2d at 1180–81. Moreover, the sentencing court in this case clearly fashioned a sentence based on the particular circumstances of Resecker's case, as required by *State v. Chaney*, 477 P.2d 441 (Alaska 1970), including Resecker's fairly substantial record of driving offenses. The sentence of 360 days

(c) A court convicting a person of an offense described in (a)(5) or (8) of this section arising out of the operation of a motor vehicle for which a driver's license is required shall revoke that person's driver's license. The revocation may be concurrent with or consecutive to an administrative revocation under AS 28.15.165. The court may not, except as provided in (e) of this section, grant limited license privileges for the following periods:

.  `.   .    .    .

(2) not less than one year if, within the preceding 10 years, the person has previously been convicted of one offense ... described in (a)(5) or (8) of this section; ...

(3) not less than 10 years if, within the preceding 10 years, the person has been previously convicted of more than one of the following offenses or has more than once been previously convicted of one of the following offenses:

(A) an offense described in (a)(5) or (8) of this section....

with 240 suspended suggests that the existence of the ninety-day minimum did not unduly affect the sentencing court's decision, and substantially undercuts Resecker's argument.

The conviction and sentence are AFFIRMED.

BRYNER, C.J., not participating.